IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERLINE KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 4875 |
| v. ) | |
| ) | Chief Judge James F. Holderman |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jerline King filed this lawsuit under the Federal Employee Liability Act ("FELA"), 45 U.S.C. §§ 51-60, against her employer, National Railroad Passenger Corporation ("Amtrak"). In her complaint, King alleged that she was injured as a result of repetitive physical trauma she experienced while performing her duties as an Amtrak train attendant. Before the court now is Amtrak's motion for summary judgment [29]. For the reasons stated herein, that motion is granted.

Background

In ruling on a motion for summary judgment, this court must consider the facts properly before it in a light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Therefore, in considering Amtrak's motion the court will review the facts properly before it and draw all reasonable inferences in King's favor.

King began working for Amtrak as a train attendant in March 1999. (Def.'s L.R. 56.1 Stmt. ¶¶ 2, 6, 7.) As a train attendant, King split her time evenly between working in sleeper

cars and coach cars. (*Id.* ¶ 8.) King's duties while working in sleeper cars consisted of changing bed linens for new passengers, making beds for existing passengers, and carrying items such as linens and bottled water from one area of the train to another. (*Id.* ¶¶ 10, 11.) While working in coach cars, King was responsible for assisting passengers with loading luggage onto the train, stowing passengers' luggage on racks, picking up trash, passing out pillows, and maintaining bathrooms. (*Id.* ¶¶ 13, 14.) As of November 2007, King was still employed by Amtrak as a train attendant. (King Dep. 13.)

King received training on how to perform her duties as a train attendant throughout her employment with Amtrak. For example, King attended a two-week training program when she began employment with Amtrak, where she was taught how to make beds, lift linens, load passengers, and "work safe." (Def.'s L.R. 56.1 Stmt. ¶¶ 15, 16; *see* King Dep. 15-16.) Part of learning to "work safe" entailed instruction on how to balance herself while walking through a moving train and how to lift with her knees. (Def.'s L.R. 56.1 Stmt. ¶¶ 17, 18, 20.) King also received safety instruction at the beginning of each trip, during which a supervisor would read and discuss a specific safety rule. (*Id.* ¶ 19.) In addition, any time King took a leave of absence, she was required to watch a safety video upon her return to work. (*Id.* ¶ 21.)

King first complained of knee pain and underwent x-rays of her left knee in December 2000. (Def.'s L.R. 56.1 Stmt. Ex. E.) The record, however, does not reflect whether King sought additional treatment for her knee pain at that time.

Approximately two years later, King began experiencing severe left knee pain and again sought medical treatment. Specifically, on October 8, 2002, King underwent MRIs of her left knee and lumbar spine after she complained to her physician of pain in those areas. (Def.'s L.R.

56.1 Stmt. Ex. H.) The MRI of King's left knee revealed "bone bruise," "findings consistent with MCL sprain," and "findings consistent with tear involving the posterior horn of the medical meniscus." (*Id.*) The MRI of King's lumbar spine revealed "moderate-severe neuroforaminal narrowing on the right at L5-S1 with moderate narrowing on the left," and "mild neuroforaminal narrowing at L4-L5." (*Id.*) King also attended an orthopedic consultation with N. H. Reddy, M.D, on October 16, 2002. (Def.'s L.R. 56.1 Stmt. Ex. F.) Dr. Reddy's consultation report reveals that King reported experiencing severe pain in her left knee for more than one month prior to the consultation. (*Id.*) King also reported "constant pain in the medial aspect of the left knee at night" and that "stair climbing, walking, and getting in and out of the car [was] very painful." (*Id.*) After performing a physical examination and reviewing x-rays and the MRI of King's left knee, Dr. Reddy diagnosed King with "internal derangement, left knee . . . possible torn medical meniscus, left knee" and scheduled King for arthrosporic surgery. (*Id.*) Plaintiff had surgery on her left knee in late October 2002. (Def.'s L.R. 56.1 Stmt. ¶ 38.)

On October 11, 2002, King applied for benefits from the United States Railroad Retirement Board based on injuries to her left knee and lower back. (Def.'s L.R. 56.1 Stmt. Ex. H.) In her Application for Sickness Benefits, King reported that she became injured on October 1, 2002. (*Id.*) The Statement of Sickness completed by Albert Reynolds, M.D., and attached to King's application, lists King's diagnosis and concurrent conditions as "L3, L4, L5, L5-S1 lumbar disc syndrome with neuropathy" and a "medial collateral ligament tear left knee." (*Id.*)

On October 26, 2005, King filed a complaint against Amtrak in the Court of Common Pleas of Philadelphia County, Pennsylvania, seeking redress for her injuries. The parties subsequently stipulated to dismissal of the Pennsylvania lawsuit, with the agreement that the date

3

of October 26, 2005, would stand for purposes of assessing the applicable statute of limitations. Approximately one year later, King filed a complaint against Amtrak in this court, alleging that as a result of her work as a train attendant she sustained injuries to her left knee and back. Before this court now is Amtrak's motion for summary judgment [29].

Analysis

In its motion, Amtrak contends that it is entitled to summary judgment on King's FELA claim on two grounds. First, Amtrak argues that King's complaint is time-barred because she failed to file her lawsuit within the three-year statute of limitations provided by Section 56 of FELA. Second, Amtrak asserts that King cannot survive summary judgment because she cannot produce evidence to satisfy each element of her claim.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). Once a properly supported motion for summary judgment is made, the non-moving party cannot rest on its pleadings but must affirmatively demonstrate, by specific factual evidence, that there is a genuine issue of material fact requiring trial. *Celotex Corp.*, 477 U.S. at 324; *Keri*, 458 F.3d at 628. Conclusory allegations, "if not supported by the record, will not preclude summary

4

judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

To assist the court in ruling on a motion for summary judgment, Local Rule 56.1 of the Northern District of Illinois imposes certain requirements on the parties. First, the moving party must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). In return, the opposing party must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). If the opposing party wants the court to consider facts in addition to those presented by the moving party, the opposing party must file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C). It is within the district court's discretion to require strict compliance with Rule 56.1. *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (collecting cases).

Amtrak first argues that it is entitled to summary judgment because King filed her complaint over three years after she became aware of the injuries giving rise to her claim. Section 56 of FELA provides that a plaintiff must bring her claim "within three years from the day the cause of action accrued." 45 U.S.C. § 56. Accrual is determined by making "an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Fries v. Chi. & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990); *see Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863,

5

865 (7th Cir. 1996). When the exact date of injury cannot be determined because the injury "resulted from continuous exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself," and the plaintiff need not have actual knowledge of the cause of injury so long as she knew or had reason to know of a potential cause. *Tolston*, 102 F.3d at 865-66. The key to determining accrual "is knowledge of the injury and, by extension, knowledge of the cause of that injury." *Id.* at 865.

In this case, King's injuries were apparent to King by no later than October 16, 2002. By October 16, King had sought medical treatment for severe pain in her left knee and lower back, underwent MRIs on her left knee and lower back, received a diagnosis reflecting degeneration of her left knee and lower back, and scheduled surgery on her left knee. King also requested work-related benefits based on the problems she experienced with her left knee and lower back. Although King may have been unaware that her knee and back problems were work-related at that time, King's injuries had become evident by October 16, 2002, and so her claim accrued by that time.

King makes two arguments in an attempt to bring her claim within FELA's statute of limitations. King first asserts that she could not have known that the injury to her left knee was work-related in October 2002 because her "other concurrent medical issues" made it difficult to determine the cause of her knee pain. (Pl.'s Opp. Summ J. 9, 12.) Whether King knew the actual cause of her knee injury at the time the injury manifest itself is not relevant to this court's inquiry concerning accrual of King's claim. *See Tolston*, 102 F.3d at 866 (rejecting proposition that "only actual knowledge of cause is enough to make the claim 'accrue'"); *Fries*, 909 F.2d at 1096 (rejecting idea that "when a plaintiff suspects several causes the cause of action does not accrue

until the governing, or even most probable, cause is known"). Instead, where many potential causes exist for a plaintiff's injury, the plaintiff "only need know or have reason to know of a potential cause." *Fries*, 909 F.2d at 1095. Here, the undisputed facts show that King sought treatment for, and thus knew about, her knee and back pain by no later than October 16, 2002. King also reported to her physicians that she had been experiencing pain in her left knee for some time prior to October 2002. Given the nature of her work-related duties, with the exercise of reasonable diligence, King should have known that her work environment was a potential cause of her knee and back pain by October 16, 2002.

King also argues that her back injury did not manifest itself until 2007 because "the MRI taken in October 2002 did not find any evidence of herniated discs or stenosis." (Pl.'s Opp. Summ. J. 9, 12.) It is not necessary, however, that a plaintiff's injury reach its maximum severity before the plaintiff's claim accrues. *Fries*, 909 F.2d at 1096. Based on King's mid-October 2002 reports of pain in her lower back and MRI results showing deterioration to her lumbar spine, some investigation into the potential cause of her back condition was required at that time. King's condition was not required to escalate into a serious medical condition before her claim accrued.

Consequently, King's FELA claim arising from the injuries to her left knee and lower back accrued by no later than October 16, 2002. Because King filed her initial complaint in this action more than three years after that date, on October 26, 2005, King's claims are time-barred.

That having been said, the court will briefly address Amtrak's second argument concerning King's failure to come forward with evidence in support of her FELA claim. FELA provides that a railroad carrier shall be liable for injuries suffered by its employees, during the

7

course of their employment, that resulted in whole or in part from the carriers' negligence. 45 U.S.C. § 51. To establish a claim under FELA, a plaintiff must offer evidence creating a disputed issue of material fact on the common law elements of negligence, including duty, breach, foreseeability, and causation. *Green v. CSX Transp., Inc.,* 414 F.3d 758, 766 (7th Cir. 2005). A plaintiff's burden of proof under FELA, however, "is significantly lighter than in an ordinary negligence case." *Holbrook v. Norfolk S. Ry.*, 414 F.3d 739, 741-42 (7th Cir. 2005); *see Green*, 414 F.3d at 766. A railroad may be held liable under FELA if its negligence "played any part, even the slightest, in producing the injury." *Holbrook*, 414 F.3d at 742. Nevertheless, a plaintiff must come forward with some evidence of the defendant's negligence at summary judgment because, even under the relaxed standards of FELA, a plaintiff "who fails to produce even the slightest evidence of negligence will lose at summary judgment." *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998); *see Holbrook*, 414 F.3d at 742.

King responded as follows to Amtrak's argument that she could offer no evidence to prove her claim of negligence:

> Amtrak is subject to the provisions of the FELA and is required to provide the Plaintiff with a safe work environment. It is Plaintiff's contention that Amtrak failed to do so by placing Plaintiff in a position where doing her job meant working in a position that exposed her to awkward postures and excessive amounts of repetitive trauma. Furthermore, the Defendant failed to educate the Plaintiff about the risks of cumulative trauma, despite having actual knowledge that employees like the Plaintiff were suffering job related injuries as a result of repetitive manual tasks. Additionally, Plaintiff made complaints about her working conditions and was told by her supervisors that there was nothing they could do for her and she was required to work in sleeper cars completing the tasks that were causing her pain. See Plaintiff's deposition, attached as Exhibit "C", page 29 - 31.
>
> Plaintiff suffered a torn meniscus of the left knee and bulging discs in her back. These injuries were caused and/or contributed to by the Plaintiff's employment with the Defendant. At her deposition, Plaintiff testified that Dr.

> Reynolds explained that her back injuries were caused by her work for the Defendant. See Plaintiff's deposition, page 80, lines 13 - 24. At trial, Plaintiff will rely upon the testimony of Dr. Reynolds, and other treating physicians, to explain the causal relationship between Plaintiff's employment and Plaintiff's injuries.

(Pl.'s Opp. Summ. J. 13.) King also separately submitted by letter to the court what she purports to be "the expert narrative report of Nicholas Angelopoulos, D.O. . . . refut[ing] two of the arguments that the Defendants made in their original motion." (Dkt. No. 38.) King submitted nothing more in support of her claim.

To survive summary judgment, King was required to do more than make bare allegations in support of her claim. *See de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008). Thus, King's assertions, unsupported by law or facts, that Amtrak was "required to provide [her] with a safe work environment" and that "Amtrak failed to do so" are insufficient to establish that Amtrak owed King a duty or that Amtrak breached that duty. *See de la Rama*, 541 F.3d at 688 (explaining that conclusory arguments, lacking citation to applicable law or facts, are waived). Similarly, King's assertion that "Plaintiff testified that Dr. Reynolds explained that her back injuries were caused by her work for the Defendant" is insufficient to establish causation. *See Simpson v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 957 F. Supp. 136, 138 (N.D. Ill. 1997) ("Expert testimony usually is necessary to establish a causal connection between an injury and its source unless the connection is a kind that would be obvious to laymen.") (internal quotation marks omitted); *Schmaltz v. Norfolk & W. Ry.*, 896 F. Supp. 180, 182 (N.D. Ill. 1995) (same). And this court will not consider King's purported "expert narrative report of Nicholas Angelopoulos, D.O." because the report is not properly before the court. *See* L.R. 56.1(b)(3)(C).

Thus, even if King's FELA claim was not time-barred, King failed to present evidence of negligence sufficient to overcome summary judgment.

Conclusion

For the foregoing reasons, the court grants summary judgment in favor of defendant National Railroad Passenger Corporation. Judgment is ordered entered. The case is terminated in its entirety.

ENTERED:

_____
James F. Holderman
Chief Judge

Dated: October 24, 2008